UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

IY BY HER PARENT
BRITTANY McLEMORE

VERSUS

BOGALUSA CITY SCHOOL
DISTRICT, *et al.*

CIVIL ACTION

NO. 25-1042

SECTION M (5)

## ORDER & REASONS

Before the Court is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by institutional defendants the Bogalusa City School District and the Bogalusa City District School Board (together, the "School Board"), and individual defendants Eddie Walker, Byron Hurst, and Karla McGehee (collectively, the "Individual Defendants," and together with the School Board, "Defendants").[1]  Plaintiff IY, by her parent Brittany McLemore, responds in opposition,[2] and Defendants reply in further support of their motion.[3]  Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons.

## I.    BACKGROUND

This is the second case filed in this Court by plaintiff alleging that IY was sexually harassed at school by Walker, a physical education teacher.[4]  In the earlier suit, which was filed on June 3, 2024 (C/A No. 24-1407), plaintiff alleged that IY was a freshman at Bogalusa High School for the

---

[1] R. Doc. 17.
[2] R. Doc. 22.
[3] R. Doc. 23.
[4] *See also IY by her parent Brittany McLemore  v. Bogalusa City District Schools, et al.*, Civil Action No. 24-1407 (E.D. La).

2023-2024 school year and enrolled in Walker's physical education class.[5]  The School Board's dress code required all high school students to wear khaki bottoms and black polo shirts for most of the school day, but for physical education class, students were required to change into joggers or gym shorts and a school T-shirt.[6]  On November 8, 2023, IY properly changed before gym class and was awaiting instructions when Walker ordered her and two other female students to pull down their jogger pants so that he could ensure they were not wearing khaki bottoms underneath.[7]  At first, IY refused, but when Walker threatened to give the girls "zeros" if they failed to comply, IY "agreed to pull down the side of her pants exposing her undergarments and hip area to coach [W]alker and her peers."[8]  IY called her mother, McLemore, who in turn informed the assistant principal of the events that had transpired in Walker's gym class.[9]  The assistant principal called Walker in for a meeting where he admitted what occurred, but characterized his actions as a "classroom rule."[10]  McLemore, unsatisfied with the result of the meeting, demanded more action, so the assistant principal consulted with the principal and initiated an investigation.[11]  The incident was captured on school surveillance cameras and the investigators reviewed the footage.[12]  On November 27, 2023, McLemore sent a letter to the School Board office to notify the board of the alleged sexual harassment and unsatisfactory resolution at the school level.[13]  McLemore claims that the Title IX coordinators did not get involved and sent the matter back to the school's principal.[14]  Then, on January 25, 2024, McLemore was informed that the investigation was

---

[5] C/A No. 24-1407, R. Doc. 4 at 4.  The balance of the facts related here are taken from the factual allegations in the complaint.
[6] *Id.* at 5.
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

completed and the school decided to eliminate Walker's classroom rule and advised him not to check for dress code compliance anymore.[15]  McLemore again was not satisfied and threatened to sue.[16]  In February 2024, superintendent Hurst informed McLemore that the investigation proved that Walker acted within the scope of his duties.[17]  In March 2024, McLemore worked with McGehee, the School Board's Title IX coordinator to initiate another investigation of the November 8 incident.[18]  After McLemore presented evidence to McGehee, and both she and IY participated in interviews, McGehee, on March 22, 2024, informed McLemore that this latest investigation resulted in a finding that Walker did not violate Title IX and acted within the scope of his duties.[19]  McLemore, still unsatisfied, asked for review by an outside, unbiased third party, but that never occurred.[20]  After March 21, 2024, IY was removed from Walker's physical education class.[21]  Plaintiff, in the first complaint, brought claims against Defendants for Title IX violations and various constitutional violations, including unlawful search (Fourth Amendment), invasion of her right to privacy (Fourth, Fifth, Ninth, and Fourteenth Amendments), lack of due process (Fifth Amendment), and denial of equal protection (Fourteenth Amendment).[22]

Defendants moved to dismiss plaintiff's first suit pursuant to Rule 12(b)(6) for failure to state a claim.[23]  Because Plaintiff did not file an opposition to the motion when due, and because the motion appeared to have merit, this Court granted the motion and dismissed plaintiff's

---

[15] *Id.*
[16] *Id.* at 5-6.
[17] *Id.* at 6.
[18] *Id.*
[19] *Id.*
[20] *Id.*
[21] *Id.* at 7.
[22] *Id.* at 2-4.
[23] C/A No. 24-1407, R. Doc. 24.

complaint without prejudice.[24]  Plaintiff filed a motion for relief from judgment,[25] which the Court

denied on December 12, 2024.[26]  Plaintiff did not appeal.

Months later, on May 23, 2025, plaintiff filed the instant suit realleging Title IX and

constitutional claims against Defendants arising from the November 8, 2023 incident.[27]  The

factual allegations are largely the same as those made in the previous complaint, but this time

plaintiff alleges more pointedly that the gym dress code was Walker's policy, not one promulgated

by the School Board, and that Walker required IY to remove her pants "exposing her personal

sexual intimate body areas for his visual inspection as a provision, and openly exposing sexually

intimate body areas in an excessive manner to her peers."[28]  Plaintiff then recounts the School

Board's investigation of the incident, which is largely the same as in the previous complaint, but

now adds how she believes the investigation failed to follow Title IX regulations and she attaches

to the complaint correspondence McLemore exchanged with various school officials regarding the

investigation, along with other documents.[29]  One such document is the Title IX coordinators'

March 21, 2024 letter to McLemore and IY explaining that, after reviewing the evidence, they

found that Walker did not violate Title IX, but that they had implemented specific supportive

measures, including having: (a) provided training to staff members on sexual misconduct and

sexual harassment; (b) provided training to school administrators on handling and reporting Title

IX allegations; (c) reviewed disciplinary actions for the misconduct of employees; (d) changed

procedures for the inspection of physical education uniforms for teachers and students; (e)

removed IY from Walker's physical education class; and (f) provided IY access to counseling

---

[24] C/A No. 24-1407, R. Doc. 29.
[25] C/A No. 24-1407, R. Doc. 34.
[26] C/A No. 24-1407, R. Doc. 37.
[27] R. Doc. 1.  From this point forward, all record document (R. Doc.) citations will refer to the record in the present case, unless otherwise noted.
[28] *Id.* at 4-5.
[29] *Id.* at 5-13; R. Docs. 1-1 through -10.

sessions with a certified counselor at the school.[30]  In the current complaint, plaintiff asserts claims for Title IX violations and constitutional violations, including deprivation of substantive and procedural due process (Fourteenth Amendment); denial of equal protection (Fourteenth Amendment); and unconstitutional strip search (Fourth Amendment).[31]  Plaintiff seeks compensatory damages for past, present, and future emotional distress and educational harm, along with punitive damages and injunctive relief requiring the School Board to revise its Title IX policies, provide staff training, and ensure compliance with federal law.[32]

## II.    PENDING MOTION

Defendants move to dismiss the complaint, contending that plaintiff has not stated a viable claim for relief.[33]  Defendants argue that plaintiff has not stated a Title IX claim because: (1) the allegations do not establish that *quid pro quo* sexual harassment occurred as plaintiff admitted that changing for physical education class was a school rule, Walker was ensuring that the students who were wearing long jogger pants had complied with that rule, and there is no allegation of unwelcome sexual conduct; (2) plaintiff failed to plead that the alleged harassment deprived her of, or interfered with, educational opportunities; (3) plaintiff's allegations show that the School Board investigated her complaint and therefore did not act with deliberate indifference; and (4) plaintiff does not state a viable remedy under Title IX, which does not permit recovery of damages for emotional distress.[34]  Defendants also argue that a Title IX claim cannot be asserted against the

---

[30] R. Doc. 1-5 at 2.

[31] R. Doc. 1 at 13-18.

[32] *Id.* at 18.

[33] R. Doc. 17.

[34] R. Docs. 17-1 at 8-13; 23 at 1-3.  Defendants identify certain inconsistencies between the facts alleged in the complaint plaintiff filed in the first suit, and the current one, regarding the November 8, 2023 incident.  R. Doc. 17-1 at 3.  Defendants argue that the facts alleged in the first suit are judicial admissions which bind plaintiff.  *Id.* While that may be true, because plaintiff is proceeding *pro se*, the Court will liberally construe the pleadings and consider all facts alleged.

Individual Defendants.[35]  Further, Defendants argue that plaintiff's constitutional claims are "recycled" Title IX claims recast as claims brought under 42 U.S.C. § 1983, which otherwise lack factual support.[36]  Finally, Defendants make a distinction between the Bogalusa City School District and the Bogalusa City District School Board, arguing that the Bogalusa City School District is not an entity capable of being sued.[37]

In opposition, plaintiff argues that she has stated a Title IX claim because (1) Walker, in a *quid pro quo* manner, threatened to give IY "zeros" if she failed to comply with his order to pull down her pants; (2) the School Board acted with deliberate indifference when it failed to follow certain Title IX investigation procedures; and (3) she has pleaded a claim for nominal and compensatory damages for educational disruption and seeks injunctive relief consisting of staff training and School Board policy revisions.[38]  As to the § 1983 claims, plaintiff argues that Defendants violated IY's right to privacy, performed an unconstitutional strip search, and failed to provide her with due process through the Title IX investigation.[39]  Further, plaintiff contends that the Bogalusa City School District is a political subdivision of the state of Louisiana that has the capacity to be sued.[40]

In reply, Defendants reassert that plaintiff, under no set of facts, can prove that the School Board violated Title IX because the incident was a one-time event that did not subject IY to harassment severe enough to compromise her educational opportunities and because the School Board, which conducted multiple investigations of the incident, did not act with deliberate

---

[35] *Id.* at 14-15.  Defendants also make a distinction between the Bogalusa City School District and the Bogalusa City District School Board, arguing that the Bogalusa City School District is not an entity capable of being sued. *Id.* at 18.
[36] *Id.* at 15-17.
[37] *Id.* at 18.
[38] R. Docs. 22 at 2-3; 22-1 at 3-5, 7-8. In this filing, plaintiff claims that IY was 12 years old at the time of the incident. *See* R. Doc. 22 at 1.
[39] R. Docs. 22 at 3-4; 22-1 at 5-7.
[40] R. Docs. 22 at 4; 22-1 at 8-10.

indifference to the alleged harassment.[41]  The School Board emphasizes that plaintiff does not argue that it did not respond to her complaint, but rather she asserts that the School Board did not perfectly follow Title IX procedures.[42]  However, says the School Board, perfect application of Title IX procedures is not required in order for a court to find that it was not deliberately indifferent to known harassment.[43] The School Board argues that deliberate indifference is a high bar for which plaintiff bears the burden of proof and here she has admitted that the School Board conducted an investigation and implemented remedial measures, meaning that she cannot prevail on her Title IX claims.[44]  Moreover, reiterates the School Board, plaintiff has not stated a viable Title IX remedy and such claims cannot be brought against the Individual Defendants.[45]  As to the § 1983 claims, Defendants reassert that they are impermissibly "recycled" Title IX claims.[46] Finally, Defendants reurge that the Bogalusa City School District is not a juridical entity under Louisiana law.[47]

## III.    LAW & ANALYSIS

### A.  Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).   Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

---

[41] R. Doc. 23 at 3-7.
[42] *Id.* at 5.
[43] *Id.*
[44] *Id.* at 6-7.
[45] *Id.* at 7-8.
[46] *Id.* at 8-9.
[47] *Id.* at 9-10.

*Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'"  *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*.  The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth."  *Iqbal*, 556 U.S. at 679.  However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B.  Claims against the Bogalusa City School District**

Plaintiff names as defendants both the Bogalusa City School District and the Bogalusa City District School Board. However, only the Bogalusa City District School Board is a proper defendant, because the Bogalusa City School District is not a separate juridical entity with the capacity to sue and be sued. Pursuant to Louisiana Revised Statutes 36:642 and 17:1, the Louisiana

Department of Education and the State Board of Elementary and Secondary Education are bodies corporate with the capacity to sue and be sued.   Further, under Louisiana Revised Statute 17:51, parish school boards are also juridical entities.   Taken together, these statutes show that a school district, as opposed to its board, is not a juridical entity with the capacity to sue and be sued.   *See Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 828-30 (E.D. La. 2012) (holding that, under La. R.S. 36:642, 17:1, and 17:51, the recovery school district is not a juridical entity that can be sued).   Thus, plaintiff's claims against the Bogalusa City School District are DISMISSED WITH PREJUDICE.[48]

### C.  Title IX Claims against Defendants

Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving [f]ederal financial assistance."   20 U.S.C. § 1681(a). Public schools that are supported with federal dollars are among the "programs or activities" within the statute's ambit.   *J.T. v. Uplift Educ.*, 2024 WL 5118486, at *2 (5th Cir. Dec. 16, 2024) (alterations omitted).   The statute prescribes only the elimination of the public entity's funding as a remedy for a violation, but the Supreme Court has held that Title IX includes an implied right of action for suits for damages for persons aggrieved by a Title IX violation.   *Id.* (citing *Cannon v. Univ. of Chi.*, 441 U.S. 677, 717 (1979)).   And, "[b]y extension, plaintiffs may bring a suit for damages based on the discriminatory actions of a school employee."   *Id.* (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 277 (1998)).

---

[48] Because the Bogalusa City School District is not a proper defendant, the term "School Board" will hereinafter refer only to the Bogalusa City District School Board.

Here, plaintiff asserts Title IX claims against the School Board and the Individual Defendants for Walker's alleged sexual harassment of IY.[49]  As an initial matter, Title IX claims cannot be brought against school officials, teachers, or other individuals because the statute "reaches [only] institutions and programs that receive federal funds."  *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009).  Thus, plaintiff's Title IX claims against the Individual Defendants must be DISMISSED WITH PREJUDICE.

Turning now to plaintiff's Title IX claim against the School Board, to prevail, she must prove that a school district official, who at a minimum had the authority to institute corrective measures, had actual notice of, and was deliberately indifferent to, Walker's alleged misconduct.[50]  *J.T.*, 2024 WL 5118486, at *3.  Stated differently, to prevail on a Title IX claim for teacher sexual harassment, a student-plaintiff must allege and prove "that (1) a school district employee with supervisory power over the offending teacher[51] (2) had actual notice of the harassment[52] and (3) responded with deliberate indifference."  *King v. Conroe Indep. Sch. Dist.*, 289 F. App'x 1, 3 n.3 (5th Cir. 2007).  "A school district acts with deliberate indifference if its response to known abuse was 'clearly unreasonable in light of the known circumstances.'"  *J.T.*, 2024 WL 5118486, at *5 (citing *Roe v. Cypress-Fairbanks Indep. Sch. Dist.*, 53 F.4th 334, 341 (5th Cir. 2022)).

Deliberate indifference is a difficult standard for a plaintiff to meet.  *Id.*  It requires a plaintiff to prove "more than just negligence or unreasonableness," because "Title IX mandates

---

[49] R. Doc. 1 at 13-15, 17-18.

[50] Because the Court finds that the School Board did not act with deliberate indifference, it need not determine whether Walker's alleged conduct, as described in the complaints filed in this case and the previous case, violated Title IX.

[51] Here, Hurst, as superintendent, had supervisory power over Walker.  *See Doe v. Katy Indep. Sch. Dist.*, 427 F. Supp. 3d 870, 878-79 (S.D. Tex. 2019) ("An employee has supervisory power if he or she is (1) invested by the school board with the duty to supervise the employee and (2) had the power to take action that would end such abuse." (quotation omitted)).

[52] It is undisputed that Hurst and McGehee, as well as other school officials, such as the principal and assistant principal, received actual notice of the alleged harassment.  *See* R. Doc. 1.

neither flawless investigations nor perfect solutions." *Id.* at *5-6 (quotation and alteration omitted). Indeed, the Fifth Circuit "has stressed that 'botched investigations … due to the ineptitude of investigators, or responses that most reasonable persons could have improved upon do not equate to deliberate indifference.'" *Id.* at *5 (quoting *I.F. v. Lewisville Indep. Sch. Dist.*, 915 F.3d 360, 369 (5th Cir. 2019)). "Deliberate indifference instead lies only where a school district completely 'fails to act' or 'fails to take additional reasonable measures after a school learned that its initial remedies were ineffective.'" *Id.* at *6 (alterations omitted) (quoting *Menzia v. Austin Indep. Sch. Dist.*, 47 F.4th 354, 362-63 (5th Cir. 2022)). "So, rather than 'second-guessing the … decisions made by school administrators,' this inquiry focuses on whether a defendant's acts or omissions were 'tantamount' to the district 'intentionally subjecting its students to harassment.'" *Id.* (alteration and internal citation omitted) (first quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999), then quoting *Fennell v. Marion Indep. Sch. Dist.*, 804 F.3d 598, 411 (5th Cir. 2015)).

Here, the School Board clearly did not act with deliberate indifference. In her complaints in both cases, plaintiff explains that the School Board conducted not one, not two, but three investigations into the incident. First, the day the incident occurred, McLemore reported it to the assistant principal, who called Walker in for a meeting, reviewed the surveillance video, and consulted with the principal.[53] The allegations, as drawn, suggest that those officials found no wrongdoing on Walker's part.[54] A couple of weeks later, McLemore sent a letter to the School Board office to notify the board of the alleged sexual harassment and unsatisfactory resolution at the school level.[55] The board sent the matter back to the school's principal, and on January 25,

---

[53] C/A No. 24-1407, R. Doc. 4 at 5; C/A No. 25-1042, R. Doc. 1 at 5.
[54] C/A No. 24-1407, R. Doc. 4 at 5; C/A No. 25-1042, R. Doc. 1 at 5-7.
[55] C/A No. 24-1407, R. Doc. 4 at 5; C/A No. 25-1042, R. Doc. 1 at 7.

2024, McLemore was informed that the second investigation was completed and the school decided to eliminate Walker's classroom rule and advised him not to check for dress code compliance anymore.[56]  McLemore again was not satisfied and threatened to sue.[57]  In February 2024, superintendent Hurst informed McLemore that the investigation proved that Walker acted within the scope of his duties.[58]  Finally, in March 2024, McGehee conducted yet another investigation, for which McLemore presented evidence, and both McLemore and IY participated in interviews.[59]  Although McGehee's investigation resulted in a finding that Walker did not violate Title IX and acted within the scope of his duties, the Title IX administrators offered several remedial measures that included providing appropriate training to staff, removing IY from Walker's class, and offering counseling services to IY.[60]  In light of these multiple investigations and remedial measures, the School Board certainly did not fail to act on or address plaintiff's complaint.  *Compare id.* at *5-7 (holding that the school did not act with deliberate indifference when it conducted some investigation, even if that investigation was flawed), *with Roe*, 53 F.4th at 341-46 (holding that a reasonable jury could find that a school employee was deliberately indifferent where, after receiving complaints, the official did not interview the plaintiff or the perpetrator, waited weeks to speak to campus police, failed to obtain a campus police report, and took no further action once external law enforcement became involved).  In the complaint filed in this case, plaintiff alleges that the School Board is liable because, in her view, it failed to follow proper Title IX procedures in the investigation of the incident.[61]  But the Supreme Court has never held that Title IX allows recovery in damages for violations of the statute's administrative

---

[56] C/A No. 24-1407, R. Doc. 4 at 5; C/A No. 25-1042, R. Doc. 1 at 7.
[57] C/A No. 24-1407, R. Doc. 4 at 5-6; C/A No. 25-1042, R. Doc. 1 at 7.
[58] C/A No. 24-1407, R. Doc. 4 at 6; C/A No. 25-1042, R. Doc. 1 at 7.
[59] C/A No. 24-1407, R. Doc. 4 at 6; C/A No. 25-1042, R. Doc. 1 at 9.
[60] C/A No. 24-1407, R. Doc. 4 at 6; C/A No. 25-1042, R. Docs. 1 at 9-10; 1-5 at 2.
[61] R. Doc. 1 at 3-15, 17-18.

requirements.  *See J.T.*, 2024 WL 5118486, at *7 (citing *Gebser*, 524 U.S. at 292).  Thus, because the School Board conducted multiple investigations (even if they were not perfect) and implemented reasonable remedial measures, it cannot be said to have acted with deliberate indifference, and consequently, plaintiff's Title IX claims must be DISMISSED WITH PREJUDICE.[62]

### D.  Section 1983 Claims

Section 1983 provides a remedy against "every person," who under color of state law, deprives another of any rights secured by the Constitution and laws of the United States.  42 U.S.C. § 1983; *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  The statute is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere. *Olabisiomotosho v. City of Hous.*, 185 F.3d 521, 525 (5th Cir. 1999).  To pursue a claim under § 1983, a plaintiff must: (1) allege a violation of rights secured by the Constitution or laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law.  *Sw. Bell Tel., LP v. City of Hous.*, 529 F.3d 257, 260 (5th Cir. 2008); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).  "Claims under § 1983 may be brought against persons in their individual or official capacity, or against a governmental entity." *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997)).

Plaintiff brings § 1983 claims against all Defendants for violations of procedural due process and equal protection arising from what she says was a faulty Title IX investigation and for violations of substantive due process and an unlawful search arising from Walker's alleged actions in physical education class on November 8, 2023.

---

[62] Because the facts concerning the investigations are undisputed and thus established, plaintiff cannot amend her complaint to plausibly allege that the School Board acted with deliberate indifference.

### 1. Procedural Due Process and Equal Protection

Plaintiff alleges that Defendants are liable for violating IY's rights to procedural due process and equal protection by conducting what she says was a faulty Title IX investigation.[63] In *Fitzgerald v. Barnstable School Committee*, 555 U.S. 246 (2009), the Supreme Court, after reviewing the purpose and scope of both Title IX and § 1983, held that Title IX does not preclude the use of § 1983 to address unconstitutional gender discrimination in schools. However, since then, several courts have held that a plaintiff may not state a § 1983 claim based on an underlying violation of Title IX, because Title IX does not allow for suits against individuals and "providing a § 1983 claim against individuals for Title IX liability would permit an end run around Title IX's explicit language limiting liability to funding recipients." *Doe #2 v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, 2022 WL 16701930, at *22-24 (M.D. La. Nov. 3, 2022) (quotation omitted); *see also Doe v. Napa Valley Unified Sch. Dist.*, 2018 WL 4859978, at *4 (N.D. Cal. Apr. 24, 2018); *Wilkerson v. Univ. of N. Tex.*, 223 F. Supp. 3d 592, 608 (E.D. Tex. 2016). As explained in these cases, *Fitzgerald* does not compel a different outcome here.

A plain reading of plaintiff's complaint leads to the conclusion that she is impermissibly attempting to sue the Individual Defendants under § 1983 for alleged due process and equal protection violations that question only the way the Title IX investigation was handled.[64] Allowing these claims to go forward against the Individual Defendants would be tantamount to allowing impermissible Title IX claims against individuals. Therefore, plaintiff's § 1983 claims for alleged

---

[63] R. Doc. 1 at 16-17.

[64] Moreover, to state an equal protection claim with respect to the Title IX investigation, plaintiff would have to show that the school officials treated IY differently in the investigation than they would have treated a male complainant under similar circumstances, with the intent to discriminate against IY because she is female. *Ruvalcaba v. Angleton Indep. Sch. Dist.*, 2022 WL 340592, at *3 (5th Cir. Feb. 4, 2022). Plaintiff has made no such allegations.

violations of IY's rights to procedural due process and equal protection are DISMISSED WITHOUT PREJUDICE.

Similarly, plaintiff's § 1983 claims against the School Board for alleged procedural due process and equal protection violations must also be dismissed because, as alleged, those claims only question the manner in which the Title IX investigation was handled. This Court has already determined that plaintiff's Title IX claims against the School Board fail because it did not act with deliberate indifference. Since plaintiff's procedural due process and equal protection claims against the School Board do not allege any additional facts outside of the Title IX investigation issues, those claims are DISMISSED WITHOUT PREJUDICE.[65]

### 2. Substantive Due Process and Search

#### a. Individual Defendants[66]

##### i. Substantive Due Process under the Fourteenth Amendment

The Fifth Circuit "has held repeatedly: a student has a substantive due-process right to be free from physical sexual abuse; and such abuse by a school employee violates that right." *Doe v. Ferguson*, 128 F.4th 727, 734 (5th Cir. 2025) (citing *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 450-52 (5th Cir. 1994); *Whitley v. Hanna*, 726 F.3d 631, 640 (5th Cir. 2013)). In addition to any school employee who was personally involved in the abuse,

> [a] supervisory school official can be held personally liable for a subordinate's violation of an elementary or secondary school student's constitutional right to bodily integrity in physical sexual abuse cases if the plaintiff establishes that:
>
> (1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and

---

[65] Nevertheless, these claims against the School Board would also be dismissed for the same reasons the substantive due process and search claims are dismissed. *See infra* § III(D)(2)(b).

[66] The complaint is unclear as to whether the Individual Defendants are being sued in their official or individual capacities, or both, for the alleged § 1983 violations. This section analyzes only any individual-capacity claims against Hurst, McGehee, and Walker.

(2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and

(3) such failure caused a constitutional injury to the student.

*Taylor Indep. Sch. Dist.*, 15 F.3d at 454. Deliberate indifference requires proof that a state actor actually knew of and disregarded an excessive risk to the victim's health or safety. *Whitley*, 726 F.3d at 641.

Plaintiff, at this motion-to-dismiss stage of the proceeding, has sufficiently alleged that Walker violated IY's substantive due process rights on November 8, 2023, by subjecting her to sexual harassment. Accordingly, the motion to dismiss is DENIED as to plaintiff's § 1983 substantive due process claim against Walker.[67]

However, plaintiff makes no allegation that Hurst and McGehee were directly involved in the harassment. Nor has plaintiff otherwise stated a viable § 1983 substantive due process claim against Hurst or McGehee since she alleged no facts demonstrating that either or both acted with deliberate indifference toward IY's constitutional rights by failing to take action after they learned of the November 8, 2023 incident. Indeed, plaintiff alleges exactly the opposite – namely, that the school administration (including Hurst and McGehee) investigated the incident and, at McGehee's recommendation, removed IY from Walker's class. Thus, the motion to dismiss is GRANTED as to plaintiff's § 1983 substantive due process claims against Hurst and McGehee, which are DISMISSED WITH PREJUDICE.[68]

---

[67] While this claim survives under a Rule 12(b)(6) standard of review, this by no means indicates how it might fare on a motion for summary judgment, upon development of the relevant facts.

[68] Because the factual allegations about the investigations, and Hurst's and McGehee's actions once they learned of the incident, are undisputed and thus established, plaintiff cannot amend her complaint to plausibly allege that the School Board acted with deliberate indifference to IY's constitutional right to substantive due process.

### ii. Strip Search under the Fourth Amendment

The Fourth Amendment protects students from unreasonable searches. *S.O. v. Hinds Cnty. Sch. Dist.*, 2018 WL 3300227, at *4 (S.D. Miss. July 3, 2018). But the scope of that protection is limited because school officials must be able to exert control over the school. *Id.* (citing *Tinker v. Des Moines Indep. Comm. Sch. Dist.*, 393 U.S. 503, 507 (1969)). To that end, the Supreme Court has explained:

> the legality of a search of a student should depend simply on the reasonableness, under all the circumstances, of the search. Determining the reasonableness of any search involves a twofold inquiry: first, one must consider whether the action was justified at its inception; second, one must determine whether the search as actually conducted was reasonably related in scope to the circumstances which justified the interference in the first place. Under ordinary circumstances, a search of a student by a teacher or other school official will be justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school. Such a search will be permissible in its scope when the measures adopted are reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction.

*New Jersey v. T.L.O.,* 469 U.S. 325, 341-42 (1985) (quotations, internal citations, and footnotes omitted). In a later case, the Supreme Court clarified that searching a student's bags or outer clothing for contraband requires a lower level of suspicion than do more intrusive searches. *Stafford Unified Sch. Dist. No. 1 v. Redding*, 557 U.S. 364, 372-77 (2009) (holding that school officials who had reasonable suspicion to suspect a student of distributing drugs at school were justified in searching the student's bag and outer clothing, but not justified in instructing her to "pull out" her bra and the elastic band on her underpants, because "the content of the suspicion failed to match the degree of intrusion").

Plaintiff asserts §1983 claims against Hurst, McGehee, and Walker for an unconstitutional search. It is undisputed that neither Hurst nor McGehee was present in the high school gymnasium

when the improper search allegedly occurred.  Accordingly, plaintiff's §1983 claims against Hurst and McGehee for an unconstitutional search must be DISMISSED WITH PREJUDICE.

As to Walker, the alleged perpetrator, the Court cannot say at this motion-to-dismiss stage of the proceeding that plaintiff has failed to state a §1983 claim against him for an unconstitutional search.  The facts alleged in the first complaint concerning what occurred – that IY pulled down the side of her pants – are different from those alleged in the second, now operative, complaint – that IY entirely removed her pants.  At a minimum, this difference requires that the facts be developed through discovery.  Thus, the motion to dismiss is DENIED as to plaintiff's §1983 claim against Walker for an unconstitutional search.[69]

### b.  The School Board

The School Board is a governmental entity.[70]  *See* La. R.S. 17:51.  A § 1983 claim brought against a governmental entity, like a school board or municipality, is analyzed under the *Monell* doctrine.  In *Monell*, the Supreme Court held that a governmental entity is liable under § 1983 only when the entity itself caused the constitutional violation at issue.  436 U.S. at 694.  To succeed on a *Monell* claim (*i.e.*, the claim against the governmental entity), the plaintiff must establish: (1) an official policy or custom, of which (2) a policymaker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose "moving force" is that policy or custom.  *Valle v. City of Hous.*, 613 F.3d 536, 541-42 (5th Cir. 2010) (quotation omitted).  A school board, like a municipality, cannot be held liable under a theory of *respondeat superior*.  *Lee-Khan v. Austin Indep. Sch. Dist.*, 567 F. App'x 243, 244 (5th Cir. 2014) (school board); *York v. Welch*, 2024 WL

---

[69] *See supra* note 67.

[70] "[A] § 1983 claim against a government employee acting in his or her official capacity is the same as a suit brought against the governmental employer itself."  *Johnson v. Harris Cnty.*, 83 F.4th 941, 946 (5th Cir. 2023).  Accordingly, any official-capacity claims asserted against Hurst, McGehee, or Walker are treated as claims against the School Board.

775179, at *2 (5th Cir. Feb. 26, 2024) (municipality) (citing *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121-22 (1988)).  Thus, "[i]t is only when the execution of the government's policy or custom inflicts the injury that the municipality may be held liable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (quotation and alterations omitted).  In other words, "to prevail against a public school district, a plaintiff must show that the district's final policymaker acted with deliberate indifference in maintaining an unconstitutional policy that caused the plaintiff's injury." *Doe v. Edgewood Indep. Sch. Dist.*, 964 F.3d 351, 365 (5th Cir. 2020).

"At the motion-to-dismiss stage, a plaintiff need not allege the specific identity of the policymaker, but must allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable." *Benfer v. City of Baytown*, 120 F.4th 1272, 1285-86 (5th Cir. 2024) (quotations omitted).  An official policy "incudes a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority." *York*, 2024 WL 775179, at *3 (quotation and alteration omitted).  And, for *Monell* liability, "an official policy may also be a persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy and practically ha[s] the force of law." *Id.* (quotation and alteration omitted).  To prove the existence of a custom, a plaintiff must show "a pattern of abuses that transcends the error made in a single case." *Benfer*, 120 F.4th at 1286 (quotation omitted).  "A successful showing of such a pattern requires similarity and specificity; prior incidents cannot simply be for any and all bad or unwise acts, but rather must point to the specific violation in question." *Id.* (quotation omitted).  The pattern of similar and specific acts also "must be comprised of sufficiently numerous prior

incidents rather than merely isolated instances." *Id.* (quotation omitted). Indeed, "'[i]solated violations are not the persistent, often repeated, constant violations, that constitute custom and policy as required for [*Monell*] liability.'" *Skyy v. City of Arlington*, 712 F. App'x 396, 400 (5th Cir. 2017) (quoting *Piotrowski v. City of Hous.,* 237 F.3d 567, 581 (5th Cir. 2001)). Considering all these requirements, "[s]howing a pervasive pattern is a heavy burden." *Benfer*, 120 F.4th at 1286 (quotation omitted).

Moreover, the official policy or custom "must be either unconstitutional or adopted with deliberate indifference to the known or obvious fact that such constitutional violations would result." *Blanchard-Daigle v. Geers*, 802 F. App'x 113, 116 (5th Cir. 2020) (quotation omitted). Deliberate indifference is established by showing "a pattern of similar violations arising from a policy so clearly inadequate as to be obviously likely to result in a constitutional violation." *Covington v. City of Madisonville*, 812 F. App'x 219, 225 (5th Cir. 2020) (quotation omitted). However, the Fifth Circuit has recognized a narrow "single incident" exception to the pattern requirement that allows deliberate indifference to be based on a single incident when "it should have been apparent to the policymaker that a constitutional violation was the highly predictable consequence of a particular policy." *Id.* (quotation omitted). "Mere negligence, even gross negligence, is not sufficient to establish deliberate indifference." *Id.*

The "moving force" element of *Monell* liability requires a plaintiff to "show that the municipal action was taken with the requisite degree of culpability and demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *York*, 2024 WL 775179, at *3 (quotation and alteration omitted). Causation in this context "requires proximate causation." *Id.* When a plaintiff claims that a municipality, or governmental entity, caused an employee to inflict an injury, "rigorous standards of culpability and causation must be applied to ensure that

the municipality is not held liable solely for the actions of its employee." *Id.* (quotation omitted).

Accordingly, to survive a motion to dismiss, "a complaint's description of a policy or custom and its relationship to the underlying constitutional violation cannot be conclusory; it must contain specific facts." *Id.* (quotation and alteration omitted).  Importantly, "[t]he causal link 'moving force' requirement and the degree of culpability 'deliberate indifference' requirement must not be diluted, for where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondent superior liability." *Covington*, 812 F. App'x at 225-26 (quotation omitted).

Plaintiff fails to allege a School Board policy or custom that was the moving force behind Walker's alleged constitutional violations.  Plaintiff has pleaded no facts suggesting that the School Board maintained an official policy or custom that was permissive of teachers committing sexual harassment or conducting alleged strip searches.  Indeed, plaintiff alleges that the School Board had a policy in place for the search of students, which specified that searches were to be done in private by an employee of the same sex as the student, with one witness of the same sex.[71] Plaintiff alleges that Walker did not follow this policy, not that the policy was unconstitutional. Therefore, plaintiff's § 1983 claims for violations of substantive due process and improper search against the School Board are DISMISSED WITHOUT PREJUDICE.

## IV.    CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' motion to dismiss (R. Doc. 17) is GRANTED as to plaintiff's claims against the Bogalusa School City District, which are DISMISSED WITH PREJUDICE.

---

[71] R. Doc. 1 at 17.

IT IS FURTHER ORDERED that Defendants' motion to dismiss is GRANTED as to plaintiff's Title IX claims against all Defendants, which are DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that Defendants' motion to dismiss is GRANTED as to plaintiff's § 1983 procedural due process and equal protection claims against all Defendants, which are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that Defendant's motion to dismiss is GRANTED as to plaintiff's § 1983 substantive due process and improper search claims against Hurst and McGehee in in their individual capacities, which are DISMISSED WITH PREJUDICE

IT IS FURTHER ORDERED that Defendant's motion to dismiss is DENIED as to plaintiff's § 1983 substantive due process and improper search claims against Walker in his individual capacity.

IT IS FURTHER ORDERED that Defendant's motion to dismiss is GRANTED as to plaintiff's § 1983 substantive due process and improper search claims against the School Board, and those against Hurst, McGehee, and Walker in their official capacities, which are DISMISSED WITHOUT PREJUDICE.

New Orleans, Louisiana, this 12th day of August, 2025.


BARRY W. ASHE
UNITED STATES DISTRICT JUDGE